**In re Procopio LOPEZ and Yolanda Lopez, Debtors.**

**Yolanda Lopez, Appellant,**

**v.**

**Specialty Restaurants Corporation, Appellee.**

**BAP No. CC–01–1216–MoHK.**
**Bankruptcy No. LA 99–17911–ER.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted May 23, 2002.

Filed Aug. 26, 2002.

Andrew P. Altholz, Santa Monica, CA, for Yolanda Lopez.

Michael F. Wright, Case, Knowlson, Jordan & Wright, LLP, Los Angeles, CA, for Specialty Restaurants Corp.

Before MONTALI, HOLMAN [1] and KLEIN, Bankruptcy Judges.

## *OPINION*

MONTALI, Bankruptcy Judge.

Former debtor Yolanda Lopez ("Lopez") appeals from the bankruptcy court's order

---

1.  Hon. Thomas C. Holman, Bankruptcy Judge for the Eastern District of California, sitting by designation.

denying her motion to reopen her chapter 7 [2] case (the "Motion to Reopen") in an effort to bolster her ability to sue appellee Specialty Restaurants Corporation dba The Proud Bird ("Specialty") on a prepetition sexual harassment cause of action, and granting Specialty's motion to intervene (the "Motion to Intervene"). The bankruptcy court based its order, primarily, on the apparent expiration of the time for seeking to revoke Lopez' discharge under Section 727(e).

We rule that adding a potentially valuable asset to the schedules is a valid ground to reopen a chapter 7 case, that expiration of the time to revoke the discharge is not a sufficient basis to preclude reopening, and that a former debtor's alleged bad faith is never a sufficient basis by itself to deny a motion to reopen to schedule an asset that has the potential to benefit creditors. Accordingly, because the Motion to Reopen should have been granted, the bankruptcy court's order will be REVERSED with directions to order the appointment of a chapter 7 trustee. The appeal from that portion of the order granting the Motion to Intervene will be dismissed as MOOT.

## I. FACTS

Before filing their joint, voluntary chapter 7 petition, Lopez and her husband Procopio Lopez met with a non-attorney petition preparer, Abad Cabrera ("Cabrera"). On September 3, 1998, they signed a petition, schedules and statements. The schedules did not list any claim against Specialty as an asset, and Lopez and her husband did not claim any property as exempt. The bankruptcy petition was not filed at this time.

In or about December of 1998, Lopez spoke to Cabrera about a legal action for sexual harassment and Cabrera referred Lopez to an attorney. On December 31, 1998, Lopez signed a form provided by the California Department of Fair Employment and Housing (the "Department") alleging sexual harassment by her employer, Specialty, and requesting authorization to file a lawsuit (the "Administrative Request"). The Administrative Request was filed with the Department on February 11, 1999, and on February 16, 1999, the Department authorized Lopez to bring a civil action under California Government Code Section 12965(b).

The Lopez' bankruptcy petition was filed on March 3, 1999 (the "Petition Date"). The schedules and statements had not been revised to include anything about Lopez' claims against Specialty. Lopez alleges that she was not aware of the Petition Date, and that she thought the bankruptcy papers had been filed around the time they had been prepared. She does not deny, however, that she never amended her schedules to include anything about her claims against Specialty.

Shortly after the Petition Date, on March 22, 1999, Lopez and others filed an action against Specialty and other defendants in the Superior Court of the State of California, County of Los Angeles (Case No. BC 207443), seeking an unspecified amount of damages for sexual harassment, requiring plaintiffs to work over 40 hours per week without overtime pay, and other alleged wrongs (the "Action"). The Action was later consolidated with other cases (Case Nos. BC 215608 and BC 223482).

Meanwhile, on April 15, 1999, Lopez' chapter 7 trustee (the "Trustee") filed a "no asset" report, and on June 14, 1999,

---

**2.** Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330 and to the Federal Rules of Bankruptcy Procedure, Rules 1001–9036.

the bankruptcy court entered an order discharging Lopez and her husband of their debts under Section 727. On June 23, 1999, their chapter 7 case was closed.

On or about January 19, 2001, Specialty wrote to Lopez' attorney in the Action stating its intention to file a motion for summary judgment on the basis that Lopez is judicially estopped from pursuing her claims because she intentionally failed to list any claim against Specialty in her bankruptcy schedules and statements. The parties stipulated to a stay of the Action pending determination in the bankruptcy court of Lopez' authorization to prosecute the Action.[3] The parties filed their motions with the bankruptcy court, and on March 7, 2001, the bankruptcy court held a hearing on the Motion to Reopen and Specialty's Motion to Intervene.[4]

On May 3, 2001, the bankruptcy court entered an order (the "Order") granting the Motion to Intervene and denying the Motion to Reopen. As to the Motion to Reopen, the bankruptcy court reasoned that creditors could not benefit from reopening because it was too late to revoke the discharge[5] and that it did not believe Lopez' assertion that she merely "forgot" to schedule the cause of action. The bankruptcy court cited *In re Koch*, 229 B.R. 78 (Bankr.E.D.N.Y.1999).[6]

Lopez filed a timely notice of appeal.

---

**3.** The stipulation stays proceedings in the Action, but provides for the trial to be re-set "upon notification to this Court that the Trustee in Bankruptcy has resolved the issue of Plaintiff's authorization to sue and proceed in this action."

**4.** Lopez argues that the bankruptcy court erred by denying her request to continue the hearing on the Motion to Intervene and the Motion to Reopen. Lopez also raises evidentiary objections. Given our disposition of this appeal, we do not reach these issues.

**5.** At the hearing on March 7, 2001, the bankruptcy court commented, "[I]t appears to the Court that the ability of the trustee or other interested parties to seek a revocation of the discharge pursuant to [Section 727(e)] has passed. So I wonder how the Debtor here expects that creditors will benefit from reopening the case." Transcript (3/7/01) p. 5:17–21.

Lopez' counsel responded that, "First of all, under the 700 series and the case law that interprets it, there's always grounds to revoke a discharge on newly learned facts. Second, if a case is reopened, a new order of relief is granted. The trustee is then reappointed and has a clear right, if there is an asset potentially to be distributed to creditors, to give a notice of potential distribution asking for claims. And in the event the estate garners any money, it can then distribute the same." *Id.* pp. 5:23–6:6.

The bankruptcy court also asked Lopez' counsel, "Is the Debtor willing to voluntarily revoke her discharge to allow the value, if any, of this lawsuit to go to her creditors?" Lopez' counsel said he had not discussed it with Lopez, "so I really couldn't say yes or no." *Id.* p. 6:7–11.

We express no opinion whether such a revocation of discharge would be appropriate or enforceable. *Cf. Hayhoe v. Cole (In re Cole)*, 226 B.R. 647, 651–54 (9th Cir. BAP 1998) (public policy makes debtor's *pre*-bankruptcy stipulation to nondischargeability of debts unenforceable); *and* 11 U.S.C. § 727(d) (case trustee, United States Trustee, and creditor, but not debtor, listed as parties who may request revocation of discharge).

**6.** The Order gives no indication that the interests of any persons other than Lopez and Specialty are at issue—except perhaps its reference to the *Koch* case, 229 B.R. 78—and the bankruptcy court clearly was not sympathetic to the former debtor. We remain puzzled, however, why the United States Trustee has not been involved in this matter to protect the interests of creditors, especially because we were advised at oral argument that Lopez' counsel had asked the United States Trustee to become involved. This is all the more puzzling because, as discussed below, creditors might well be paid in full if the case is reopened and they will receive nothing if Specialty has its way and the bankruptcy court's decision is affirmed.

## II. ISSUES[7]

1. Did the bankruptcy court abuse its discretion by denying Lopez' Motion to Reopen?

2. Is Specialty's Motion to Intervene moot?

## III. STANDARDS OF REVIEW

■ A decision regarding reopening of a case based upon allegations of additional assets "is committed to the sound discretion of the bankruptcy court, and will not be set aside absent an abuse of discretion." *Kozman v. Herzig (In re Herzig)*, 96 B.R. 264, 266 (9th Cir. BAP 1989). "A bankruptcy court necessarily abuses its discretion if it bases its ruling on an erroneous view of the law. The Panel also finds an abuse of discretion if it has a definite and firm conviction the court below committed a clear error of judgment in the conclusion it reached." *Palm v. Klapperman (In re Cady)*, 266 B.R. 172, 178 (9th Cir. BAP 2001) (citations and quotation marks omitted). Mootness is a jurisdictional issue we consider sua sponte and review de novo. *See Paulman v. Gateway Venture Partners III, L.P. (In re Filtercorp, Inc.)*, 163 F.3d 570, 576 (9th Cir. 1998).

## IV. DISCUSSION

We start with the Motion to Reopen. Section 350(b) provides that "[a] case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. § 350(b). Rule 5010 provides:

A case may be reopened on motion of the debtor or other party in interest pursuant to § 350(b) of the Code. In a chapter 7, 12, or 13 case a trustee shall not be appointed by the United States trustee unless the court determines that a trustee is necessary to protect the interests of creditors and the debtor or to insure efficient administration of the case.

Fed.R.Bankr.P. 5010.

■ Under the above provisions, reopening a case is typically ministerial and "presents only a narrow range of issues: whether further administration appears to be warranted; whether a trustee should be appointed; and whether the circumstances of reopening necessitate payment of another filing fee." *Menk v. LaPaglia (In re Menk)*, 241 B.R. 896, 916–17 (9th Cir. BAP 1999). *Cf. Beezley v. California Land Title Co. (In re Beezley)*, 994 F.2d 1433, 1434 (9th Cir.1993) (denying reopening to

---

7. Lopez' standing is not an issue in this case. On January 7, 2002, the Clerk of the Bankruptcy Appellate Panel ("BAP") issued a Clerk's Order requiring Lopez to file a written response demonstrating how she meets the "person aggrieved" test so as to have standing in this appeal. Lopez filed a response on January 22, 2002, in which she argued that her secured debt had been eliminated by surrender of her former house, her unsecured debt was less than $6,000, and the value of the Action is at least $70,000 to $125,000. Therefore, she alleged, she could show "a reasonable possibility of a surplus after satisfying all debts, and accordingly has shown a pecuniary interest." *See Matter of Andreuccetti*, 975 F.2d 413, 416 (7th Cir.1992). On January 23, 2002, the BAP Clerk issued a notice that Lopez' response appeared to satisfy the concerns raised in her earlier order (subject to our review and modification). We agree.

Lopez cites the evidence she submitted on this matter, regarding the potential value of the Action, in support of her arguments on this appeal for reopening her case, and she includes the evidence in her excerpts of record even though it does not appear to have been before the bankruptcy court. Specialty has not objected to our consideration of this evidence, and we make reference to it below to illustrate that the Action *could* have value. We do not rely on the evidence, however, in reaching our conclusion.

schedule creditor in no-asset case, because "dischargeability is unaffected by scheduling; amendment of Beezley's schedules would thus have been a pointless exercise.").

Therefore, although a motion to reopen is addressed to the sound discretion of the bankruptcy court, "the court has the duty to reopen an estate whenever prima facie proof is made that it has not been fully administered." *Herzig*, 96 B.R. at 266. In particular, it is an abuse of discretion to deny a motion to reopen where "assets of such probability, administrability, and substance" appear to exist "as to make it unreasonable under all the circumstances for the court not to deal with them." *Id.* (quotation marks and citation omitted). A motion to reopen can be denied, however, where the chance of any substantial recovery for creditors appears " 'too remote to make the effort worth the risk.' " *Id.* (citation omitted).

Specialty has argued before the bankruptcy court and on this appeal that further administration was not warranted because creditors could not benefit from reopening since the time to revoke Lopez' discharge has expired under Section 727(e). Assuming the time to revoke the discharge has indeed run,[8] we disagree with Specialty's conclusion that creditors could not benefit from reopening.[9]

8. We do not decide this issue. The bankruptcy court stated that "it appears" the ability to seek revocation of the discharge "has passed" pursuant to Section 727(e). We note that most courts appear to reject any extension of the time limits in Section 727(e), although a minority view would either extend the overall time or hold that closing of a case interrupts the running of that time period. *See generally* Rosemary Williams, *Creditor's Right to Have Bankruptcy Discharge of Individual Debtor Revoked, Vacated, and Set Aside*, 138 A.L.R.Fed. 253, text accompanying nn. 47–94, 1997 WL 475156 (1997); *Hadlock v. Dolliver (In re Dolliver)*, 255 B.R. 251 (Bankr.D.Me.2000) (rejecting cases holding that § 727(e) time limits can be equitably tolled or have not expired, in a case with hidden assets, because such a case supposedly is not "validly" closed); *Towers v. Boyd (In re Boyd)*, 243 B.R. 756, 759–65 (N.D.Cal.2000) (rejecting various arguments for evading time limits in § 727(e)). *Cf. Davis v. Johnson (In re Johnson)*, 187 B.R. 984, 986–88 (Bankr.S.D.Cal.1995) (equitable tolling could not extend one-year period in § 727(e), but closing case interrupted running of limitations period).

9. We do not decide whether Specialty had standing and a sufficient interest to intervene on this issue and argue against reopening. Although we doubt it, we assume so for purposes of this discussion.

On the one hand, an argument in favor of Specialty's standing might be that it could lose a judicial estoppel defense if a chapter 7 trustee prosecutes the Action instead of Lopez. *See Haley v. Dow Lewis Motors, Inc.*, 72 Cal.App.4th 497, 511, 85 Cal.Rptr.2d 352, 361 (1999) ("judicial estoppel is rarely appropriate in a chapter 7 context ..."); *In re Tarrer*, 273 B.R. 724, 735 (Bankr.N.D.Ga.2001) (defendants in unscheduled arbitration had sufficient "personal stake" to have standing to object to reopening, because they might lose judicial estoppel defense and had an interest in "avoiding a long and potentially expensive litigation on the merits"). *Cf. Paine*, 250 B.R. at 105 (no appellate standing where no defenses are lost); *Menk*, 241 B.R. at 917 (same).

On the other hand, any judicial estoppel defense would seem to arise not because Lopez misled Specialty by failing to list the Action in her bankruptcy papers—Specialty was not a party to the bankruptcy case—but because Lopez allegedly "played fast and loose" and otherwise misled the courts. *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782–85 (2001). In other words, Specialty's possible judicial estoppel defense is a windfall that would bar what might be a successful claim for sexual harassment. The potential loss of that defense seems no greater harm than what is faced by any potential defendants in actions unique to bankruptcy, such as avoidance actions. We question whether this is the sort of harm that would give Specialty a right to intervene or standing to oppose reopening. *See generally Fondiller v. Robertson (In re Fondiller)*, 707 F.2d 441,

As Lopez points out, Specialty's argument is a non-sequitur. Lopez' discharge affects her personal liability, but if the Action has any value then creditors stand to benefit regardless whether her discharge can be revoked. That is true because the Action became property of the bankruptcy estate as of the Petition Date, even though the Action was not listed in the schedules, and property that is neither abandoned nor administered remains property of the estate even after the case is closed. *See* 11 U.S.C. § 541 (property of estate) and § 554(d) (property not abandoned or administered remains property of estate); *Pace v. Battley (In re Pace)*, 146 B.R. 562, 564–66 (9th Cir. BAP 1992), *aff'd*, 17 F.3d 395, 1994 WL 55523 (9th Cir.1994) (table) (unscheduled property remains in estate after case is closed).

In other words, the Action belongs to the estate, not to Lopez. Lopez conceded this in her Motion to Reopen and at the hearing in the bankruptcy court, and specifically asked to reopen not just so she could amend her schedules but also so that a chapter 7 trustee could administer the Action.

Although we make no assumption about what actual value the Action might have, we note that it does not appear on its face be valueless or unworthy of consideration by a chapter 7 trustee. Unlike the situation in *Herzig*, it does not appear to be barred by a limitations period—it has survived in the state court since at least March of 1999 without having been dismissed—nor has a chapter 7 trustee or its counsel already "thoroughly" investigated and decided not to pursue it. *See Herzig*, 96 B.R. at 265–66.[10] As we observed in *Menk*, the decision whether to reopen should not become a battleground for litigation of the underlying merits. *Menk*, 241 B.R. at 915–17. Neither the Action nor its possible value should be litigated in order to decide whether to reopen the bankruptcy case.

For all of these reasons, further administration is warranted. If the case is reopened a chapter 7 trustee can be appointed, investigate whether the Action has value, and then prosecute it, settle it, abandon it, or arrange for Lopez to prosecute it in exchange for the estate receiving a share of the proceeds. The chapter 7 trustee can also notify creditors to file claims if it appears the estate may have any assets, and can make distributions on those claims out of any eventual recovery. *See Dolliver*, 255 B.R. at 258 (although § 727(e) prevented revocation of discharge, case could be reopened to recover and administer concealed assets); Fed.

442 (9th Cir.1983) (limitations on appellate standing in bankruptcy context); *Menk*, 241 B.R. at 915–17 (prospective defendant in adversary proceeding did not have standing to appeal order granting reopening). *See also McColgan v. Clark (In re Snyder)*, 4 F.2d 627, 628 (9th Cir.), *cert. denied*, 269 U.S. 556, 46 S.Ct. 19, 70 L.Ed. 409 (1925) (questioning prospective defendant's standing to oppose reopening under Bankruptcy Act of 1898). *Cf. In re Dewberry*, 266 B.R. 916, 920–22 (Bankr.S.D.Ga.2001) (decision to reopen is "of only marginal, *if any*, relevance" to judicial estoppel decision, because having omitted cause of action from schedules debtor "cannot un-ring the bell") (emphasis added).

**10.** On this appeal Lopez argues that the Action is worth at least $70,000 to $125,000, based on an offer under California Code of Civil Procedure Section 998 and the opinion of her counsel in the Action, respectively. In contrast, she claims that unsatisfied creditors' claims amounted to less than $6,000 when her bankruptcy case was pending. In other words, according to Lopez, creditors could be paid in full.

Lopez' evidence and arguments as to value were not before the bankruptcy court and we do not rely on them. We mention them only to illustrate that there is potential for the Action to have value for the benefit of creditors.

R.Bankr.P. 3002(c)(5) (notice to creditors if trustee notifies court that payment of dividend appears possible).

The bankruptcy court appeared to be motivated in part by a desire to sanction Lopez for not previously disclosing the Action. At the hearing on March 7, 2001, the bankruptcy court commented, "the Court cannot accept the proffered testimony and argument of [Lopez] that somehow she simply . . . forgot to put [the Action] down [on her schedules and statements]." Transcript (3/7/01) p. 8:1–4.

■ Assuming without deciding that Lopez intentionally omitted the Action from her schedules and statements, that is not a sufficient ground to deny the Motion to Reopen. That approach would risk harming creditors in an attempt to punish a former debtor.

The *Koch* decision, on which the bankruptcy court relied, is distinguishable. As Lopez points out, in *Koch* the debtor avoided appointment of a chapter 7 trustee by converting to chapter 11 immediately after the case was reopened. The *Koch* court later vacated its reopening order on the ground that under chapter 11 the creditors would not benefit from reopening because only the former chapter 7 trustee could prosecute the omitted action. *Koch,* 229 B.R. at 87. Assuming without deciding that the *Koch* court's analysis of stand-

ing was correct,[11] no such facts are present in this case. As we have already noted, there is no evidence that the Action is valueless and therefore the bankruptcy court cannot presume that creditors will not benefit from reopening Lopez' chapter 7 case. *See Tarrer,* 273 B.R. at 735 (distinguishing *Koch* as a case in which creditors would not benefit from reopening).

There may be other circumstances in which creditors would no benefit from reopening, but again the facts on this appeal do not show any such circumstances. One court has held, for example, that where the former debtor admitted that his exemption would exceed the value of the omitted action, his lack of good faith and the prejudice to the defendant were sufficient to preclude reopening. *In re Maloy,* 195 B.R. 517, 520 (Bankr.M.D.Ga.1996). Lopez claims, however, that the value of the Action far exceeds her exemption. *Cf. Maloy,* 195 B.R. at 520 ("[t]o reopen the case now in anticipation of the possibility that Debtor's contention may be incorrect [i.e. that the action could have some value above the exemption] is a step too far beyond the bounds of foreseeable reality"). *See Tarrer,* 273 B.R. at 735 (distinguishing *Maloy* as a case in which creditors would not benefit from reopening).

At least one court has held that where it appears creditors may benefit from re-

---

**11.** We question whether, in circumstances such as those in *Koch,* a chapter 11 debtor in possession would lack standing to prosecute an action that has been added to the schedules and statements. We also note that there may be practical benefits from proceeding in chapter 11 instead of chapter 7.

For example, in chapter 7 there might be no way to fund the litigation costs of an omitted action other than engaging counsel on a contingency basis who would advance the costs, whereas in chapter 11 a plan of reorganization might let some creditors fund the legal fees and costs in exchange for a greater share of any proceeds. If no such advantages were apparent in the *Koch* case, there were alternatives other than vacating the order reopening the case. In appropriate circumstances the case could have been converted back to chapter 7 or a chapter 11 trustee could have been appointed. These and perhaps other alternatives could have preserved a potentially valuable asset for the benefit of creditors. The *Koch* court did not address these considerations, and seems to have been motivated by annoyance with the debtor and perhaps doubt about the actual value of the omitted action, rather than by the interests of creditors. *Koch,* 229 B.R. 78 (passim).

opening, a former debtor's good faith is irrelevant. *Dewberry*, 266 B.R. at 921 ("when reopening of the case is sought for the purpose of administering a previously undisclosed asset, the question of debtor's good faith is irrelevant").

We do not decide whether a former debtor's alleged bad faith or lack of good faith is a factor at all when creditors' interests are at stake. Assuming it is a factor, we hold that it is insufficient to preclude reopening if there is prima facie proof from which a chapter 7 trustee could reasonably determine that administering a previously undisclosed asset could benefit creditors. *See Herzig*, 96 B.R. at 266.

We note that any legitimate concerns about a former debtor's misconduct can be addressed by other methods, rather than refusing to reopen a bankruptcy case. In appropriate situations a debtor can be subject to prosecution and penalties. *See, e.g.,* 18 U.S.C. §§ 152 and 3571. If a debtor shows bad faith, or if third parties are prejudiced by nondisclosure of an asset, then the bankruptcy court can exercise its discretion to disallow any claimed exemption in the asset, in whole or in part. *See Arnold v. Gill (In re Arnold)*, 252 B.R. 778 (9th Cir. BAP 2000). In the circumstances of this appeal, where all creditors might get paid in full, Lopez still might receive a substantial portion of any recovery in the Action (11 U.S.C. § 726(a)(6)), but presumably that recovery would be because the Action had merit, not because Lopez gained any advantage by failing to list the Action.

Moreover, the court hearing the Action could impose any appropriate sanctions against Lopez (either as a current litigant, if the Action is abandoned to her, or perhaps as a former litigant, if it is not). That court could also rule that she is judicially estopped from asserting her claims. We express no opinion whether any such judicial estoppel would bar Lopez or her chapter 7 trustee from prosecuting the Action for the benefit of creditors, or from recovering anything from Specialty above some limit, such as what it would take to pay creditors in full. These are matters for that court to decide, and for a chapter 7 trustee to consider. *See Hamilton*, 270 F.3d 778, 782–85 (judicial estoppel barred former debtor from asserting claims not disclosed in bankruptcy schedules); *Conrad v. Bank of America Nat. Trust & Sav. Assoc.*, 45 Cal.App.4th 133, 146–55, 53 Cal. Rptr.2d 336, 347–50 (1996) (same), *rejected on other grounds by Lovejoy v. AT & T Corp.*, 92 Cal.App.4th 85, 93–94, 111 Cal. Rptr.2d 711, 717 (2001). *But cf. Haley*, 72 Cal.App.4th 497, 511, 85 Cal.Rptr.2d 352, 361 (1999) ("judicial estoppel is rarely appropriate in a chapter 7 context in a case in which the debtor has failed to schedule a claim.... The debtor will lack standing to sue so the suit can be maintained only if the bankruptcy trustee substitutes in or abandons the claim. There is no possibility of unfair advantage because the bankruptcy court will take appropriate actions to promote the goals of bankruptcy and protect the process.") (citations omitted). *See generally* Hon. William Houston Brown, Lundy Carpenter, Donna T. Snow, *Debtor's Counsel Beware: Use of the Doctrine of Judicial Estoppel in Nonbankruptcy Forums*, 75 Am.Bankr.L.J. 197 (2001).[12]

12. We have recognized in footnote 9, above, that Specialty's asserted judicial estoppel defense arguably would be lost or diminished by reopening. *See generally Haley*, 72 Cal. App.4th at 511, 85 Cal.Rptr.2d 352. We also recognized, in the same footnote, that the defense is a windfall to Specialty. If the court trying the Action determines that loss of this windfall is appropriate, that is hardly a reason to deny creditors the opportunity to share in the proceeds of a potentially meritorious action. *See In re Daniel*, 205 B.R. 346,

For all of these reasons, the bankruptcy court abused its discretion by denying the Motion to Reopen. Lopez' bankruptcy case should have been reopened and a chapter 7 trustee appointed. In light of that conclusion, any issues concerning the Motion to Intervene are moot.

## V. CONCLUSION

The Action is a potentially valuable asset that should be administered for the benefit of creditors. Denial of the Motion to Reopen cannot be justified on the ground that § 727(e) might bar revocation of Lopez' discharge. Nor can it be justified by any desire to punish Lopez for failing to disclose her claims against Specialty in her original schedules. The portion of the Order denying the Motion to Reopen is REVERSED, the appeal from the portion of the Order granting the Motion to Intervene is DISMISSED as MOOT, and the case is remanded for appointment of a chapter 7 trustee and further proceedings.

KLEIN, Bankruptcy Judge, concurring.

I join the majority decision and write separately to emphasize salient practice points about the problem of unscheduled causes of action that is increasingly a headache for nonbankruptcy courts and litigants so that they may have more sophisticated insights about how to deal with the problem.

It has become increasingly popular to interpose judicial estoppel as a defense to a lawsuit by a former debtor who did not schedule the cause of action in the bankruptcy case. The theory is one of inconsistent positions: the debtor, by not scheduling the cause of action in the bankruptcy case, impliedly contended that it did not exist or was valueless, which position was accepted by the bankruptcy court when the case was closed without the unscheduled asset being administered. Then, inconsistently, the debtor sues on the cause of action. Defendants rightly smell something rotten. Nonbankruptcy courts are rightly reluctant to tolerate such "fast and loose" litigation tactics.

Yet, the judicial estoppel defense to the basic unscheduled cause of action is meretricious and potentially inexpedient in two respects.

First, the unscheduled cause of action is still property of the bankruptcy estate after a chapter 7 bankruptcy case is closed, not property of the debtor, regardless of whether the case is reopened and regardless of whether schedules are amended after reopening.

Upon closing a case, correctly scheduled property not otherwise administered by the trustee is abandoned to the debtor. 11 U.S.C. § 554(c).

Property that was not correctly scheduled remains property of the estate forever (until administered or formally abandoned by the trustee), regardless of whether it is scheduled after the case is reopened.[13] 11 U.S.C. § 554(d); *cf.* Helbling & Klein, *The Emerging Harmless Innocent Omission Defense to Nondischargeability under Bankruptcy Code § 523(a)(3)(A): Making Sense of the Confusion over Reopening Cases and Amending Schedules to Add Omitted Debts,* 69 AM.BANKR.L.J. 33, 37–47 (1995).

349 (Bankr.N.D.Ga.1997) ("[r]eopening may be detrimental to [the defendant] by depriving it of a judicial estoppel argument but this court cannot countenance depriving Debtor's creditors of the opportunity to share in damages to which Debtor is entitled in order to preserve [the defendant's] judicial estoppel argument").

**13.** For this reason, the debtor's desire to "schedule" the cause of action in this case was misconceived.

Thus, in the case of an omitted cause of action, the trustee is the real party in interest and the more correct defenses are that the action is not being prosecuted by the real party in interest and that the debtor lacks standing. *Haley v. Dow Lewis Motors, Inc.,* 72 Cal.App.4th 497, 511, 85 Cal.Rptr.2d 352 (1999).

The purpose of reopening the bankruptcy case in this context is to permit the appointment of a trustee to deal with the property of the estate. At the time of reopening, the court must determine whether a trustee should be appointed because the original trustee is ordinarily relieved at the time the case is closed. Fed. R.Bankr.P. 5010. If the purpose of the reopening is to deal with unscheduled assets as property of the estate, then it is per se an abuse of discretion not to order appointment of a trustee.

The second difficulty with the judicial estoppel defense is that the automatic stay remains in effect to protect property of the estate so long as it is property of the estate, even after the bankruptcy case is closed. 11 U.S.C. § 362(c)(1). Thus, dismissing the action probably violates the automatic stay. The practical consequence is futility because acts in violation of the automatic stay are void ab initio.

*Schwartz v. United States (In re Schwartz),* 954 F.2d 569, 574–75 (9th Cir. 1992).

If one is determined to impose judicial estoppel, the better course is to use it as a device to require that the action be prosecuted by the real party in interest—a bankruptcy trustee.

Reopening does not bring property back into the estate nor does it cause the automatic stay to be revived. The unscheduled asset never lost its character as property of the estate and the automatic stay, which otherwise terminated on closing the case, never ceased to remain applicable to protect (and render void any act against) the property of the estate. It is for this reason that it is often difficult to perceive non-obfuscatory merit in a defendant's opposition to reopening; [14] it ought to be in the interest of defendant to be in a position to have a definitive resolution of the matter.

The expedient solution to this dilemma is to require the parties to return to bankruptcy court for reopening so that a trustee can be appointed to deal with the cause of action that is property of the estate. The trustee has authority to act for the benefit of the estate and may sell the cause of action, prosecute it in nonbankruptcy court,[15] settle it, or abandon it to

---

**14.** Speciality's argument in opposition to reopening that creditors would have no interest because their claims have been discharged is even more misconceived than the former debtor's assumption that scheduling the asset would improve her rights in the cause of action.

Under black-letter bankruptcy law, the fact that the debtor is discharged from personal liability on claims has no effect on the rights of the claimants to be paid on their allowed claims from the bankruptcy estate. 11 U.S.C. § 726. In fact, the creditors holding discharged claims have an intense interest in a reopening that may lead to funds coming into the estate and being available for distribution to creditors because that is the only way they will be paid on their discharged claims.

Likewise, Speciality's further assertion that because it is too late to revoke the discharge "all of the money obtained from Lopez's claim against Specialty will ultimately go to Lopez, not her creditors" misstates the law.

Under the bankruptcy distribution scheme (absent either a specific compromise approved by the court or a successful claim of exemption), the debtor would receive nothing until after all administrative expenses and all claims are paid in full with interest at the legal rate from the date of the filing of the petition. 11 U.S.C. § 726(a)(6).

**15.** The trustee is authorized to employ the debtor's trial counsel with court approval. 11 U.S.C. § 327(e).

the debtor as of inconsequential value to the estate.[16]

The worst thing the parties can do is to ignore the property of the estate problem. The worst thing a bankruptcy court can do is to frustrate the process by refusing to reopen and order the appointment of a trustee who can definitively deal with property of the estate.

16. If it is abandoned to the debtor, the debtor thenceforth owns the cause of action and must be prepared to deal with all defenses, including estoppel.