

FILED

MAR 19 2025

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>CAMERON RICHARD DE SMIDT,<br>Debtor. | BAP No.    CC-24-1071-FGL<br>CC-24-1072-FGL<br><br>Bk. No. 15-21082-MH |
| CAMERON RICHARD DE SMIDT,<br>Appellant,<br>v.<br>NATIONSTAR MORTGAGE LLC, d/b/a/<br>Mr. Cooper; MORTGAGE ELECTRONIC<br>REGISTRATION SYSTEMS, INC.;<br>FEDERAL NATIONAL MORTGAGE<br>ASSOCIATION,<br>Appellees. | **MEMORANDUM**[*] |

Appeal from the United States Bankruptcy Court
for the Central District of California
Mark D. Houle, Bankruptcy Judge, Presiding

Before: FARIS, GAN, and LAFFERTY, Bankruptcy Judges.

## INTRODUCTION

Cameron Richard De Smidt sued Nationstar Mortgage LLC

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

("Nationstar"), Mortgage Electronic Registration Systems, Inc. ("MERS"), and Federal National Mortgage Association ("Fannie Mae") (collectively "Appellees") in state court based on an allegedly unlawful foreclosure. His suit failed, however, because the claims he asserted became property of the bankruptcy estate created when he filed a chapter 7[1] bankruptcy petition. These claims never reverted to him because he did not properly schedule them. Mr. De Smidt has tried and failed multiple times to reopen his bankruptcy case and wrest the alleged claims from the estate. He brings these appeals after the bankruptcy court denied his most recent attempt.

We AFFIRM the bankruptcy court's decisions to deny the motion to reopen the case and subsequent motion to reconsider.

**FACTS**

In 2007, Mr. De Smidt purchased real property in Murrieta, California (the "Property") with financing secured by a deed of trust. He defaulted on the deed of trust in 2008. In February 2015, the trustee under the deed of trust recorded a notice of default and scheduled a trustee's sale for November 17, 2015.

The sale did not happen as scheduled because Mr. De Smidt filed a chapter 7 petition on November 13, 2015. He received a discharge in February 2016. The chapter 7 trustee filed a Report of No Distribution in

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

April 2016. The case was closed in June 2016.

At some point in 2017, Fannie Mae purchased the Property at a nonjudicial foreclosure sale.

In 2017, Mr. De Smidt sued the Appellees and other defendants in California state court on a variety of claims arising from the origination of the loan and the foreclosure of the deed of trust (the "Foreclosure Claims"). Among other things, he sought to undo the allegedly wrongful nonjudicial foreclosure on his home. Other defendants filed a demurrer objecting to Mr. De Smidt's standing because the Foreclosure Claims belonged to his bankruptcy estate. Mr. De Smidt filed a first amended complaint that did not address the standing issue. The Appellees filed a second demurrer, restating the standing objection. The trial court granted the Appellees' demurrer and gave Mr. De Smidt leave to amend the complaint again. He filed a second amended complaint against Nationstar and Fannie Mae but again failed to address the standing issue. The trial court granted Nationstar's and Fannie Mae's demurrer without leave to amend in February 2018.

Mr. De Smidt appealed the dismissal to the California Court of Appeal. The Court of Appeal affirmed the trial court and agreed that it would be futile to allow Mr. De Smidt to amend his claim a third time to show he had standing to pursue the Foreclosure Claims. Mr. De Smidt did not appeal that decision.

In 2021, in preparation to sue the Appellees in state court again,[2] Mr. De Smidt moved to reopen his chapter 7 case so he could amend his schedules and disclose the Foreclosure Claims. The bankruptcy court granted that motion and allowed Mr. De Smidt thirty days to file a motion for leave to amend his schedules. The court directed the clerk to reclose the case without further order if no matter was pending after thirty days. The chapter 7 trustee was reappointed.

Mr. De Smidt's counsel claims that he spoke with the chapter 7 trustee about amending his schedules. According to counsel, the chapter 7 trustee said that Mr. De Smidt should "just let the matter close because the estate had no creditors entitled to payment." Allegedly relying on this statement, Mr. De Smidt did not file a motion to amend his schedules before the deadline. About two weeks after the deadline, Mr. De Smidt filed a "motion to late file amended schedules," but the court took no action on the motion and the clerk reclosed the case.

Mr. De Smidt sued the Appellees in state court again in late 2021.

---

[2] Mr. De Smidt claims that he brought a new action because, in the meantime, the California Court of Appeal ruled that the foreclosure was improper. This mischaracterizes the Court of Appeal's decision. In 2017, Fannie Mae brought an unlawful detainer action against Mr. De Smidt. The trial court granted summary judgment, but the appellate court reversed. Mr. De Smidt says in his opening brief that "the Court of Appeals reversed because Fannie Mae **was not, pursuant to California law, the foreclosing beneficiary."** But the Court of Appeal said no such thing. Rather, it held that summary judgment was improper because there were triable issues of fact concerning who was the rightful beneficiary of the deed of trust with the authority to sell the Property.

Once again, Mr. De Smidt did not address the standing issue in his filings. In late 2023, the state court found that he did not have standing because any cause of action remained with the bankruptcy estate. The court also found that Mr. De Smidt was collaterally estopped from litigating the standing issue. Mr. De Smidt did not appeal.

In December 2023,[3] Mr. De Smidt filed a third motion to reopen his chapter 7 bankruptcy case. The court denied the motion and a motion for reconsideration. Mr. De Smidt's appeals from those orders are before us now.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(1). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

1.      Whether the bankruptcy court erred when it denied the motion to reopen.

2.      Whether the bankruptcy court erred when it denied the motion for reconsideration.

## STANDARDS OF REVIEW

We review the bankruptcy court's denial of the motion to reopen for an abuse of discretion. *Staffer v. Predovich* (*In re Staffer*), 306 F.3d 967, 971

---

[3] In the meantime, Mr. De Smidt had filed a second motion to reopen, before losing in the state trial court, and a motion to vacate the discharge and dismiss the bankruptcy under Civil Rule 60(b) (made applicable by Rule 9023). The bankruptcy court denied both motions. Mr. De Smidt did not appeal either of those rulings.

5

(9th Cir. 2002). We review the denial of a motion for reconsideration under the same standard. *Cruz v. Stein Strauss Tr. #1361* (*In re Cruz*), 516 B.R. 594, 601 (9th Cir. BAP 2014).

To determine whether the bankruptcy court has abused its discretion, we conduct a two-step inquiry: (1) we review de novo whether the bankruptcy court "identified the correct legal rule to apply to the relief requested" and (2) if it did, we consider whether the bankruptcy court's application of the legal standard was illogical, implausible, or without support in inferences that may be drawn from the facts in the record. *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc).

We may affirm based on any ground supported by the record. *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*, 322 F.3d 1064, 1076-77 (9th Cir. 2003).

## DISCUSSION

### A. The bankruptcy court did not abuse its discretion by denying the motion to reopen.

Mr. De Smidt created his standing problem. Chapter 7 debtors must file schedules that list and describe all of their assets, including legal claims against others. § 521(a)(1)(B)(i); *see Sierra Switchboard Co. v. Westinghouse Elec. Corp.*, 789 F.2d 705, 707 (9th Cir. 1986). When a chapter 7 case is closed, assets that the debtor scheduled but the trustee did not administer are automatically "abandoned," meaning they revert to the debtor's ownership. § 554(c). But any assets that the debtor failed to schedule are

6

not abandoned and instead remain property of the estate. § 554(d). Because Mr. De Smidt has never scheduled the Foreclosure Claims (and has never denied that they are property of the bankruptcy estate), they were not abandoned to him, they remain property of his bankruptcy estate, and he has no right to prosecute them.

A debtor in Mr. De Smidt's position can attempt to solve the problem by reopening the bankruptcy case and filing amended schedules that disclose the omitted asset. If the trustee does not administer the newly disclosed asset and the court recloses the case, the asset is abandoned to the debtor. But such debtors must first convince the bankruptcy court to reopen the bankruptcy case.

Section 350(b) controls reopening bankruptcy cases: "A case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause." Bankruptcy courts routinely grant most motions to reopen. "[R]eopening a case is typically ministerial and presents only a narrow range of issues: whether further administration appears to be warranted; whether a trustee should be appointed; and whether the circumstances of reopening necessitate payment of another filing fee." *Lopez v. Specialty Rests. Corp. (In re Lopez)*, 283 B.R. 22, 26 (9th Cir. BAP 2002) (cleaned up). The court should not deny a motion to reopen in order to sanction a debtor for a bad faith failure to disclose an asset timely. *Id*. at 29.

But bankruptcy courts still have discretion to deny such motions. *See,*

7

*e.g.*, *id.* at 27 ("A motion to reopen can be denied, however, where the chance of any substantial recovery for creditors appears too remote to make the effort worth the risk." (cleaned up)); *Beezley v. Cal. Land Title Co.* (*In re Beezley*), 994 F.2d 1433, 1434 (9th Cir. 1993) (per curium) (holding that, where the debtor sought to reopen a case to add an omitted debt to his schedules in order to obtain a discharge of that debt, the court did not abuse its discretion when it denied the motion to reopen because reopening the case would not affect the discharge of that debt). If Congress intended to require reopening on request in any and all circumstances, it would have used a verb like "shall" rather than "may." *See Lopez v. Davis*, 531 U.S. 230, 241 (2001).

This case is exceptional because, in 2021, the bankruptcy court granted Mr. De Smidt's request to reopen the case and gave him an opportunity to schedule the Foreclosure Claims. Although reopening is usually ministerial and routine, the statute does not entitle debtors to multiple chances to fix their own mistake.

Mr. De Smidt attempts to explain away his decision not to amend his schedules in 2021 by blaming the chapter 7 trustee. His attorney claims that the trustee told him that, because there were no creditors, reopening the case was unnecessary. The bankruptcy court did not abuse its discretion when it found this account insufficient.

First, the attorney offered only his own hearsay account of this conversation. He never obtained a statement from the trustee.

Second, the attorney's statement is implausible. It is difficult to believe that a trained trustee made a statement that is so obviously wrong. Undisclosed assets are not automatically abandoned at the closing of the case, even if there are no creditors. *See generally* § 554.[4]

Third, a competent attorney would not have relied blindly on the trustee's statement. A trivial amount of legal research would have revealed that the alleged statement was wrong.

Fourth, it is not clear that Mr. De Smidt's counsel believed or relied on the trustee's statement, because he apparently disregarded the trustee's statement and filed a motion to amend the schedules (albeit after the deadline).

Fifth, Mr. De Smidt does not (and probably cannot) explain why, when he filed his tardy motion to amend the schedules, he did not mention the trustee's alleged statement. Instead, he attributed his tardiness only to his attorney's calendaring error.

Sixth, the trustee's alleged statement does not explain why Mr. De Smidt waited from 2017 until 2021 to move to reopen his case, or why he waited from 2021 until 2023 to attempt again to reopen the case.

---

[4] Mr. De Smidt points out that, in a no-asset case, claims of creditors are discharged whether they are scheduled or not. *In re Beezley*, 994 F.2d at 1434. He argues that, by analogy, in a no-claim case, undisclosed assets are automatically abandoned. This argument is frivolous. *Beezley* is based on the plain language of § 523(a)(3), which governs the discharge. Section 554(c), which governs automatic abandonment, plainly refers only to scheduled assets.

Mr. De Smidt also blames the Appellees for his delay. He says that the Appellees falsely represented that they were entitled to foreclose, and he did not realize that the foreclosure was questionable until facts came out in the unlawful detainer action during 2021. This contention is nonsensical. Mr. De Smidt sued the Appellees for wrongful foreclosure in 2017. He must have believed at that time that the Foreclosure Claims existed. But even though the state court repeatedly alerted him to the standing issue, he did nothing. He has no one to blame but himself for the delay.

Initially, the bankruptcy court also relied on bad faith as a ground for its decision. The court incorrectly recalled that Mr. De Smidt's counsel had said at a prior hearing that he had not spoken to the chapter 7 trustee, and it inaccurately accused counsel of changing his story. As this Panel noted in *Lopez*, it is not clear that the debtor's good or bad faith is relevant to a motion to reopen a case. 283 B.R. at 30. But the court in this case made clear, at the hearing on Mr. De Smidt's motion for reconsideration, that it did not matter whether counsel told the court that he had or had not spoken to the trustee. Therefore, the bankruptcy court ultimately did not rely on bad faith in denying Mr. De Smidt's motion to reopen his case.

The bankruptcy court also noted in passing that there was no evidence before the bankruptcy court of an asset to administer that had any significant value. The court was correct that Mr. De Smidt's motion only described the Foreclosure Claims in cursory fashion and that he did not offer a declaration or other evidence that the claims existed and had any

value. On a motion to reopen a bankruptcy case, a bankruptcy court ordinarily should not insist on detailed proof of the value and nature of the undisclosed assets; instead, in most cases, if there is any indication of an asset that might be administered for the benefit of creditors, the court should reopen the case and appoint a trustee who will investigate the matter and decide on an appropriate course of action. *Id.* at 28 (holding that "the decision whether to reopen should not become a battleground for litigation of the underlying merits"). But this is not an ordinary case. In light of Mr. De Smidt's repeated and unjustified failure to resolve the problem of his standing, the court could reasonably have been suspicious of the merits of the Foreclosure Claims. It is also telling that Mr. De Smidt's counsel told the chapter 7 trustee about the Foreclosure Claims in 2021. If the trustee thought the Foreclosure Claims might produce a recovery, he could have moved to reopen the case and assert those claims. But the trustee did not do so.[5] In these unusual circumstances, the court did not abuse its discretion by considering Mr. De Smidt's failure to offer any evidence of the existence and value of the Foreclosure Claims. And, in any

---

[5] At oral argument, the Appellees' counsel described the subsequent history of Mr. De Smidt's litigation in state court and argued that the state courts had rejected all of the Foreclosure Claims on the merits. This information is not part of the record and, although we might be able to take judicial notice of it, the state court records are not readily accessible to us. We note, however, that Mr. De Smidt's counsel did not quarrel with the description or argument offered by the Appellees' counsel.

11

event, the entirety of the record makes clear that the lack of such evidence did not play a major role in the court's decision.

## B. The bankruptcy court did not abuse its discretion by denying the motion to reconsider.

To succeed on his motion for reconsideration, Mr. De Smidt needed to: (1) present newly discovered evidence, (2) show clear error, or (3) show an intervening change in controlling law. *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009).[6] Mr. De Smidt failed to make any of those showings, so the bankruptcy court did not abuse its discretion in denying his motion for reconsideration.

First, Mr. De Smidt failed to present newly discovered evidence. His counsel attempted to argue that the allegations against the Appellees were newly discovered evidence. But Mr. De Smidt's counsel admitted that Mr. De Smidt knew about the Foreclosure Claims when he filed his third motion to reopen. Mr. De Smidt did not discover any new evidence after he filed that motion, or after the court ruled, that could have supported a motion for reconsideration.

Second, Mr. De Smidt failed to show clear error. Mr. De Smidt's counsel has strenuously argued that the bankruptcy court incorrectly recalled his statements about alleged conversations with the chapter 7

---

[6] "A motion for reconsideration is considered to be a Rule 9023 motion, which incorporates [Civil Rule] 59(e)." *Clinton v. Deutsche Bank Nat'l Trust Co.* (*In re Clinton*), 449 B.R. 79, 83 (9th Cir. BAP 2011).

trustee, and that the bankruptcy court erroneously found that Mr. De Smidt's delay was unreasonable. These arguments fail. The bankruptcy court's recollection was not a basis for denying the third motion to reopen, so it cannot be reversible error. Mr. De Smidt caused the unreasonable delay by continually failing to reopen his case. The bankruptcy court did not commit any error that would support a motion for reconsideration.

Third, Mr. De Smidt does not argue, and could not plausibly argue, that there was an intervening change in controlling law.

## C.    The Appellees had standing to oppose the motion to reopen.

Mr. De Smidt argues that the Appellees did not have standing to challenge his motion to reopen because they were not among his creditors.[7] We disagree.

The premise of Mr. De Smidt's argument is that the foreclosure of the deed of trust extinguished his debt to the Appellees. Therefore, the argument runs, the Appellees are no longer creditors, and they were not entitled to appear in bankruptcy court.

Mr. De Smidt's premise contradicts the main thrust of his Foreclosure

---

[7] The Appellees argue that Mr. De Smidt has waived this argument because he did not make it in the bankruptcy court. *See Lopez v. Pac. Mar. Ass'n*, 657 F.3d 762, 767 (9th Cir. 2011) ("[W]e adhere to the twin requirements that a litigant must argue clearly all of his theories of relief, both in the district court and in his opening brief, to preserve those theories on appeal."). He mentioned standing in a single line of a memo he filed in the bankruptcy court. This mention is barely sufficient to avoid waiver.

Claims. Mr. De Smidt argues that the Appellees were not entitled to foreclose because they did not establish that they were the beneficiaries of the deed of trust. If Mr. De Smidt is right, the foreclosure was invalid. If that is so, the debt secured by the deed of trust was not extinguished. In that case, the Appellees would be creditors and would have standing to appear in the bankruptcy case.

Even if he were correct and he no longer owes the Appellees any money, we would still reject his argument. Mr. De Smidt takes an unduly narrow view of "standing" and ignores the fact that the term "standing" encompasses multiple doctrines.

One aspect of standing is "constitutional" or "Article III standing." The Supreme Court has explained that,

> at an irreducible minimum, Art. III requires the party who invokes the court's authority to show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant, and that the injury fairly can be traced to the challenged action and is likely to be redressed by a favorable decision[.]

*Valley Forge Christian Coll. v. Ams. United for Separation of Church & State*, 454 U.S. 464, 472 (1982) (cleaned up). When a debtor seeks to reopen a bankruptcy case in order to sue, courts are divided on the question whether the defendants have Article III standing to oppose the motion to reopen. *Compare, e.g.*, *In re Boyd*, 618 B.R. 133, 15 (Bankr. D.S.C. 2020) (holding that such defendants lack standing to object to reopening), *with In*

14

*re Lewis*, 273 B.R. 739, 743 (Bankr. N.D. Ga. 2001) (holding that state court defendants had standing to oppose the debtor's motion to reopen because the reopening would affect the current state court litigation). In the unusual circumstances of this case, we hold that the Appellees had standing to object to the motion to reopen. The decisions holding that there is no standing generally observe that the defendants' injury is speculative and uncertain because it depends on the outcome of the unscheduled claims. In this case, the Appellees have been defending themselves against the Foreclosure Claims for about eight years. The expense that they have unnecessarily incurred in defending themselves against claims that Mr. De Smidt had no right to assert is hardly speculative.

Another aspect of standing is "statutory standing." Generally speaking, only a "party in interest" is entitled to appear and be heard on matters before a bankruptcy court. *Truck Ins. Exch. v. Kaiser Gypsum Co.*, 602 U.S. 268, 279-80 (2024). The Supreme Court held that the term "party in interest" is "capacious" and covers any party whose "financial exposure may be directly and adversely affected by a plan . . . ." *Id.* at 278, 284;[8] *see In re Owen-Moore*, 435 B.R. 685, 690 (Bankr. S.D. Cal. 2010) (stating that the term "party in interest" is "an elastic and broad one designed to give a Court great latitude to insure fair representation of all constituencies

---

[8] *Truck Insurance* considered the "party in interest" concept under § 1109 in a chapter 11 case. Mr. De Smidt gives no reason to think that we should apply a narrower definition in the context of a motion to reopen a chapter 7 case.

impacted in any significant way by [a bankruptcy]" (citation omitted)); *In re Nardelli*, 327 B.R. 488, 491 (Bankr. M.D. Fla. 2005) (holding that professionals retained by the chapter 7 trustee are parties in interest because they have an interest in getting paid from the estate).

There is no question that reopening Mr. De Smidt's chapter 7 case so he can sue the Appellees would have a direct financial effect on the Appellees: if the bankruptcy court had reopened the case and allowed Mr. De Smidt to amend his schedules, the Appellees would have had to incur attorneys' fees defending against Mr. De Smidt's claims and might have lost a judicial estoppel defense.[9]

The Appellees are parties in interest and have Article III standing and statutory standing to oppose the motion to reopen because, if this case were reopened, Mr. De Smidt's litigation would impact Appellees' pecuniary interests, and they would be injured by continuing to defend against meritless litigation.

## CONCLUSION

The bankruptcy court did not abuse its discretion in denying the motions to reopen and reconsider. We AFFIRM the bankruptcy court's rulings.

---

[9] *Truck Insurance* implicitly overruled decisions such as *Giddens v. Kreutzer (In re Kreutzer)*, 344 B.R. 634, 645 (N.D. Okla. 2006), *aff'd*, 249 F. App'x 727 (10th Cir. 2007), holding that defendants in state court proceedings are not "parties in interest" who can oppose a motion to reopen.