**In re Nancy Kushmider OTTO, Randall Ernest Otto, Debtors.**

**No. 01–31994F.**

United States Bankruptcy Court, E.D. Pennsylvania.

May 6, 2004.

John R. Crayton, Crayton & Belknap, Bensalem, PA, Patricia M. Mayer, Belknap & Mayer, PC, Levittown, PA, Steven Lewis Mutart, Crawford, Wilson & Ryan, LLC, West Chester, PA, for Debtors.

Gloria M. Satriale, Chester Springs, PA, trustee.

Dashiell C. Shapiro, U.S. Department of Justice, Washington, D.C., U.S. Trustee.

## MEMORANDUM

BRUCE I. FOX, Bankruptcy Judge.

On December 17, 2003, the movants, Mrs. Nancy Kushmider Otto and Rever-

end Randall Ernest Otto filed a motion to reopen their chapter 7 bankruptcy case so that they may commence an adversary proceeding to determine the dischargeability of certain federal income tax obligations under 11 U.S.C. § 523(a)(1), (7). By order dated January 30, 2004, I requested that the Ottos address certain issues implicated by their motion to reopen. They have done so, by way of argument and memoranda. The United States (on behalf of its agency, the Internal Revenue Service) opposes the motion.

At bottom, the Ottos maintain that this bankruptcy court is the most convenient, efficient and economical forum in which to raise their dischargeability claims. Although they acknowledge that an alternative forum exists in the United States Tax Court, they argue that requiring them to take such a route would be overly burdensome and uncertain.

The United States contends that the Tax Court forum (preceded by an administrative hearing before an appeals officer) would be the appropriate process to determine the dischargeability of the Ottos' tax obligation. Indeed, the respondent asserts that this process has already commenced by Reverend Otto's request for an administrative collection due process hearing.

Upon consideration of the arguments of the parties as well as the totality of the circumstances, I conclude that the Ottos have not demonstrated that reopening this case in order to litigate against the United States in this court is the better exercise of discretion. Given that their bankruptcy case was closed almost two years ago, given that they failed to commence a dischargeability proceeding in this court while the case was open, given that a reasonable—albeit not identical—alternative forum exists in the Tax Court, and given the congressional decision to provide non-bankruptcy fora concurrent jurisdiction over this dischargeability issue, denial of this motion is appropriate.

## I.

There is no dispute that Reverend and Mrs. Otto filed a voluntary petition in bankruptcy under chapter 7 on August 22, 2001. The debtors were represented by counsel, Steven Mutart, Esquire. From the docket entries in the case, it is apparent that the Ottos filed their bankruptcy schedules and statement of affairs and attended the requisite meeting of creditors under sections 341 and 343. Upon examination of their schedules, and after meeting with the Ottos, the chapter 7 trustee determined that there were no non-exempt assets for her to administer. As no creditor objected, the Ottos received their chapter 7 discharge and their case was closed on December 28, 2001.

The bankruptcy discharge order issued in favor of the Ottos was consistent with Official Bankruptcy Form 18. The front page simply stated that the debtors received a discharge under 11 U.S.C. § 727. The back page contained an "Explanation of Bankruptcy Discharge in a Chapter 7 Case." The purpose of this explanation was to inform the debtors and their creditors that certain obligations fell within the scope of the chapter 7 discharge and other obligations did not. Under the heading "Debts that are Not Discharged," the explanation included: "Debts for most taxes."

Thus, the Ottos were forewarned that certain federal tax obligations might not be discharged. (Presumably, their counsel echoed this concern.) Indeed, the United States attached to its opposition to the instant motion a copy of a letter sent by Reverend Otto to the IRS—dated February 12, 2002, shortly after closure of the bankruptcy case—that refers to discussions between his bankruptcy counsel and

the IRS concerning "tax issues," including the scope of the bankruptcy discharge.[1]

 In general, some tax obligations are made nondischargeable by 11 U.S.C. § 523(a)(1) or (7). In enacting the Bankruptcy Reform Act of 1978, Congress decided that certain nondischargeability disputes—those arising under subsections 523(a)(2), (a)(4), (a)(6), and (a)(15)—would fall within the exclusive jurisdiction of the Bankruptcy Court. 11 U.S.C. § 523(c). To effectuate this grant of exclusivity, the procedural rules establish a deadline for a creditor to commence litigation under those subsections only, with the deadline preceding the closing of the case. *See* Fed. R. Bankr.P. 4007(c). The other nondischargeability disputes, including the dischargeability of a tax obligation under section 523(a)(1) and (7), are not within the exclusive subject matter jurisdiction of the bankruptcy court under subsection 523(c), and therefore may be determined by non-bankruptcy courts. *See generally Cassidy v. Commissioner,* 814 F.2d 477, 480–81 (7th Cir.1987); *United States v. Hoffman,* 643 F.Supp. 346, 348 (E.D.Wis.1986); *In re Fucilo,* 2002 WL 1008935, at *7 (Bankr. S.D.N.Y.2002); *Swanson v. Commissioner,* 121 T.C. 111, 126–28, 2003 WL 22020782 (2003); *Thomas v. Commissioner,* 2003 WL 21781151 (Tax Ct.2003); *Abuteir v.*

*State of Texas,* 2000 WL 1784352 (Tex.Ct. App.2000). As to those dischargeability challenges, there is no deadline for commencing litigation that will raise the issue. Fed. R. Bankr.P. 4007(b).[2]

For those dischargeability disputes outside the exclusive jurisdiction of bankruptcy court, when neither debtor nor creditor seeks a determination in the bankruptcy court, typically the issue will arise when a creditor commences a collection action on a pre-bankruptcy debt after the bankruptcy case is closed (and the automatic stay is ended by virtue of section 362(c)(2)(A)). The former debtor will then assert the discharge injunction found in 11 U.S.C. § 524(a). *See generally, e.g., Matis v. Delasho,* 191 Misc.2d 338, 741 N.Y.S.2d 849 (N.Y.Sup.2002); *Ephraim v. Allvest, Inc.,* 108 Wash.App. 1046, 2001 WL 1262212 (2001). The creditor may counter that its claim should be held nondischargeable, and the non-bankruptcy forum will adjudicate the creditor's assertion. *See Beyer v. Beyer,* 2000 WL 1022753, at *3 (Conn.Super.Ct.2000), *supplemented by* 2001 WL 100362 (Conn.Super.Ct.2001).

Apparently, neither the Ottos nor the United States opted to seek a determination of the dischargeability of the purported tax obligation during the Ottos' bank-

---

**1.** The inference from this letter is that in February 2002, the IRS did not concede that the tax obligation had been discharged. Thus, the Ottos could have sought to reopen their case at that time, just two months after the bankruptcy had been closed, in order to determine the dischargeability of their tax debt. They opted not to do so.

**2.** Although Rule 4007(b) provides that a dischargeability complaint that does not involve section 523(c) may be filed at any time, it cannot be filed in this court after a bankruptcy case is closed, unless the case is first reopened. A bankruptcy court has no jurisdiction after a case is closed. *See Walnut Associates v. Saidel,* 164 B.R. 487, 491

(E.D.Pa.1994); *Cook v. Chrysler Credit Corp.,* 174 B.R. 321, 327 (M.D.Ala.1994); *In re Brantley,* 1997 WL 74663, at *1 (Bankr. W.D.Ark.1997).

Accordingly, the absence of any deadline in this procedural rule merely reflects that these complaints may be filed in a non-bankruptcy forum after the bankruptcy case is closed. *See* Fed. R. Bankr.P. 4007 advisory committee's note (1983). The lack of a deadline does not imply that a bankruptcy court should reopen a case whenever a party desires to file such a dischargeability complaint. *See, e.g., In re Beaty,* 306 F.3d 914 (9th Cir.2002) (laches warrants a denial of a motion to reopen to commence dischargeability litigation).

ruptcy case. Rather, the IRS commenced a collection action against the Ottos on October 17, 2002, after their bankruptcy case was closed. Respondent's Memorandum, Ex. A. On November 4, 2002, the IRS received a "request for a collection due process hearing" from Reverend Otto. In this request, Reverend Otto asserted, *inter alia*, that the amount of the tax obligation asserted by the IRS "does not reflect discharge of penalties and interest from bankruptcy." *Id.* The parties informed me that this administrative hearing has not yet taken place.

## II.

■ Pursuant to section 350(b), "a [closed bankruptcy] case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor or for other cause." Whether to reopen a closed bankruptcy case is committed to the discretion of the bankruptcy court. *See, e.g., Donaldson v. Bernstein,* 104 F.3d 547, 551 (3d Cir.1997); *Judd v. Wolfe,* 78 F.3d 110, 116 (3d Cir.1996); *Matter of Case,* 937 F.2d 1014, 1018 (5th Cir.1991) ("This discretion depends upon the circumstances of the individual case and accords with the equitable nature of all bankruptcy proceedings."); *Hawkins v. Landmark Finance Co.,* 727 F.2d 324 (4th Cir.1984); *Matter of Becker's Motor Transportation, Inc.,* 632 F.2d 242, 245 (3d Cir.1980), *cert. denied,* 450 U.S. 916, 101 S.Ct. 1358, 67 L.Ed.2d 341 (1981); *Urbanco Inc. v. Urban Systems Streetscape, Inc.,* 111 B.R. 134 (W.D.Mich.1990). The burden of demonstrating circumstances sufficient to justify the reopening is on the moving party. *E.g., In re Cloninger,* 209 B.R. 125, 126 (Bankr.E.D.Ark.1997); *In re Nelson,* 100 B.R. 905 (Bankr.N.D.Ohio 1989).

■ In seeking to reopen their chapter 7 case, the former debtors assert that re-

opening is appropriate because it would benefit them. In general, when a former debtor seeks to reopen a closed bankruptcy case, the court should consider a variety of factors including: the length of time that the case was closed, *see Matter of Case,* 937 F.2d at 1018; whether a non-bankruptcy forum, such as state court, has the ability to determine the issue sought to be posed by the debtor, *see, e.g. In re Tinsley,* 98 B.R. 791 (Bankr.S.D.Ohio 1989); *In re E.A. Adams, Inc.,* 29 B.R. 227 (Bankr.D.R.I.1983); *In re Hepburn,* 27 B.R. 135 (Bankr.E.D.N.Y.1983); whether prior litigation in bankruptcy court implicitly determined that the state court would be the appropriate forum to determine the rights, post-bankruptcy, of the parties; whether any parties would be prejudiced were the case reopened or not reopened; the extent of the benefit which the debtor seeks to achieve by reopening; and whether it is clear at the outset that the debtor would not be entitled to any relief after the case were reopened. *See generally Arleaux v. Arleaux,* 210 B.R. 148, 149 (8th Cir. BAP 1997), *aff'd,* 149 F.3d 1186 (8th Cir.1998) (Table).

■ As noted above, in a number of instances, courts have exercised their discretion not to reopen a bankruptcy case where there is non-bankruptcy forum that may hear the dispute which serves as the basis for the request to reopen. *See, e.g., In re Tinsley,* 98 B.R. at 791; *In re E.A. Adams, Inc.,* 29 B.R. at 227; *In re Hepburn,* 27 B.R. at 135. In part, this denial recognizes the practical concern, noted by the Third Circuit Court of Appeals, that there is a "flood of litigation pouring in on the bankruptcy courts, a development that requires that they carefully husband their resources." *In re Brown,* 951 F.2d 564, 570 (3d Cir.1991).

Accordingly, to the extent that the Ottos are able to raise their dischargeability

48

claim in another forum, and based upon the opposition of the United States to reopening, the circumstances presented here suggest a denial of relief under section 350(b), given the two years that have passed since the Ottos' bankruptcy case was closed, and given that they elected not to commence discharge litigation during the pendency of their bankruptcy case, knowing of the IRS's asserted tax claim. If the Ottos, however, had no other forum to assert their discharge injunction, the prejudice they would suffer were relief under section 350(b) denied would outweigh countervailing circumstances.

Prior to 2003, it was questionable whether the Tax Court would consider the injunctive effect of a bankruptcy discharge to an asserted tax claim. *See Harding v. Commissioner*, 1989 WL 25038 (1989); *Graham v. Commissioner*, 75 T.C. 389, 399, 1980 WL 4429 (1980). However, in *Washington v. Commissioner*, 120 T.C. 114, 119–21, 2003 WL 840965 (2003), the Tax Court distinguished the above decisions as involving only deficiency proceedings, and held that the Tax Court had the power to determine the dischargeability of tax claims under 11 U.S.C. § 523(a) in lien proceedings, such as that against the Ottos. Decisions since *Washington* have reaffirmed Tax Court jurisdiction over dischargeability disputes. *See, e.g., Swanson v. Commissioner*, 121 T.C. at 126–28.

Therefore, the Ottos do not dispute that, if this case were not reopened, the United States Tax Court would have jurisdiction to address the scope of their asserted discharge injunction. They argue, nonetheless, that the Tax Court forum is not as expeditious as this court. They further contend, *inter alia*, that it is unclear precisely what procedures and burdens of proof would be applicable in Tax Court when the non-dischargeability of tax obligation is raised.

The main argument posed by the movants is the impracticability of bringing their dischargeability claim in the Tax Court forum. While acknowledging the Tax Court's decision in *Washington*, the movants attempt to distinguish that decision by contending that their litigation would be more complex than the matter resolved by the *Washington* court. More specifically, they argue that resolution of their case would depend on "issues of fact, credibility and subjectivity in a determination of whether their tax returns, which were filed 'after two years before' their Chapter 7 petition, represented their 'honest and reasonable attempt to satisfy the requirements of the tax law.'" Movants' Memorandum at 5.

In support of their position, the movants quote language from one of the concurring opinions filed in *Washington v. Commissioner*, 120 T.C. at 124–25 (Wells, J., concurring):

Although the issue to be decided in the instant case is relatively straight-forward, it is possible that taxpayers will present this Court with more difficult questions that may be better suited for consideration by a Bankruptcy Court. Under such circumstances, this Court may defer to a Bankruptcy Court to decide the matter. Such deference would not be premised upon any concerns that we lack jurisdictional capacity to consider the issue. Rather, it would be based upon considerations of comity and judicial efficiency, combined with our recognition that this Court does not deal with bankruptcy matters with the expertise that a Bankruptcy Court possesses.

*Id.* Based upon these statements, the Ottos question the willingness and ability of the Tax Court to resolve their dischargeability issues.

Although I accept the premise that a closed bankruptcy cased may be reopened so as to permit the adjudication of complex applications of bankruptcy law (rather than burden a non-bankruptcy forum with such a task), typically the analysis of claims under § 523(a)(1)(B) or (C) (the subsections inferentially referenced in the movants' memorandum) would not implicate complicated issues of bankruptcy law. As the movants concede, their argument under § 523(a)(1)(B) would only require evaluation of whether they filed their untimely tax returns "after two years before the date of the filing of the petition." In fact, the movants admit that this issue was precisely the one resolved by the Tax Court in *Washington v. Commissioner.* Movants' Memorandum at 5 ("It was the Tax Court's not so difficult task to disabuse Mr. and Mrs. Washington and explain to them that the grammatically criminal phrase 'after two years before the date of the filing of the petition' meant the opposite of their factual argument."). There is no reason to think that the Tax Court could not again analyze this statutory provision in the Ottos' case.

Furthermore, while the issues arising from section 523(a)(1)(C) or 523(a)(7) litigation may be more fact intensive, they are not particularly complex. Moreover, in a separate concurring opinion in *Washington v. Commissioner,* 14 T.C. at 133–35 (Beghe, J., concurring), Judge Beghe acknowledged both the capacity and jurisdictional obligation of the Tax Court to decide disputes properly before it, even if more complicated bankruptcy issues are involved:

> There may be concern whether, as a matter of comity and discretion, we should refrain from deciding the discharge issue and instead remit petitions to the Bankruptcy Court, which has expertise and authority to construe and apply its own order of discharge. Of course, this Court has decided myriad cases in which, in order to resolve the tax issues, we decided issues of law, both Federal and State, outside our primary expertise. We have not hesitated to do so before, and we properly do so in the case at hand.

It should be noted that if we declined to resolve the bankruptcy dischargeability issue, we could not *force* petitioners to return to the Bankruptcy Court to have that court resolve that question. What would we do if petitioners refused to go to the Bankruptcy Court and insist that we decide the bankruptcy dischargeability issue? We would have an obligation and a responsibility to enter a decision sustaining or rejecting in whole or in part the collection action set forth in the notice determination. We would not be fulfilling that obligation and that responsibility if we were to request the taxpayer to ask the Bankruptcy Court to resolve a question over which we have concurrent jurisdiction.

Our request to that effect would be inconsistent with the goals of judicial and party economy embodied in the slogan "one-stop shopping." If we have jurisdiction to resolve the bankruptcy dischargeability issue, we should not ask the taxpayer who raises that issue at an Appeals Office hearing and in this Court to go to another court to resolve that issue and then return to this Court so we can decide, at the end of what will by then have become a very long figurative day, whether respondent may proceed with the collection action as determined in the notice of determination.

Even if the taxpayer were willing to go back to the Bankruptcy Court, it would be a waste of time and money to try to force or allow them to do so. The money would consist not only of additional legal fees but also of additional interest

accruing while the liability remains unpaid. And if the taxpayers are willing, for purposes of delay, to take these extra steps and to incur the additional costs, the IRS should not be impeded further in the collection of tax debts that are due and owing if they have not been discharged in bankruptcy.

*Id.* at 133–35 (emphasis in original).

Therefore, while the Tax Court might prefer simple dischargeability issues, it fully understands its jurisdictional responsibilities and is capably prepared to meet them, even in those disputes raising more complicated questions. Thus, the movants' concerns that they will incur the unreasonable time and expense of attending an administrative hearing and, if unsuccessful, appealing the administrative decision only to have the Tax Court send them back to this bankruptcy court is likely unfounded. The United States has indicated its willingness to have all issues concerning the scope of the Ottos' discharge adjudicated in Tax Court, and I have no basis to conclude that such a forum will be unavailable.

The Ottos also argue that the appropriate standard of review is unclear after *Washington v. Commissioner* and may not entitle them to trial *de novo* in Tax Court. Movants' Memorandum at 6–7. In this respect, they imply that denying them access to the bankruptcy court may prevent them from receiving a fair trial:

> Tax Court would be limited to reviewing the record made before the settlement officer and the standard of review would be whether the settlement officer abused his or her discretion in applying the law.

*Id.*

Clearly, the Tax Court in *Washington* did not definitively resolve whether the Ottos would be entitled to trial *de novo* in that forum on factual issues surrounding the nondischargeability claim. Various concurrences discussed the appropriate standard for review, while noting that the majority decision did not decide that procedural issue. This ambiguity, however, does not outweigh all of the other factors that weigh against reopening; nor does it mean that the Ottos would suffer some prejudice if only the administrative hearing were evidentiary. A hearing officer must have a legitimate basis for factual findings or such findings will be held erroneous on appeal.

Finally, Reverend and Mrs. Otto argue that there would be conflicting burdens of proof applied to dischargeability issues raised in bankruptcy court as opposed to Tax Court. More specifically, they maintain that *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991), which would place the burden of persuasion on the question of nondischargeability upon the IRS by a preponderance standard, and I.R.C. Rule 142 are contradictory. However, a review of Rule 142(a)(1) indicates that there is no conflict. That Rule provides:

> The burden of proof shall be upon the petitioner, except as otherwise provided by statute or determined by the Court; and except that, in respect of any new matter, increases in deficiency, and affirmative defenses, pleaded in the answer, it shall be upon the respondent.

Whether or not the pleadings in Tax Court would require the Commissioner to raise the issue of nondischargeability as an affirmative defense, I have no doubt that the Tax Court will follow the allocation of the burden of persuasion as determined by the United States Supreme Court and other appellate courts. *See, e.g., In re Fretz*, 244 F.3d 1323, 1327 (11th Cir.2001); *Berkery v. Commissioner*, 192 B.R. 835, 840 (E.D.Pa.1996), *aff'd*, 111 F.3d 125 (3d Cir.

1997) (Table), *and cert. denied,* 522 U.S. 881, 118 S.Ct. 208, 139 L.Ed.2d 144 (1997). Thus, although the movants are correct that Rule 142(a)(1) generally places the evidentiary burden in Tax Court upon the petitioning taxpayer, to the extent the respondent Commissioner raises affirmative issues such as nondischargeability, the burden of proof on that question would fall upon the IRS, as it would in this court. Accordingly, there would be no contradiction between application of the burden of proof in Tax Court and this forum.[3]

### III.

The procedures by which Reverend and Mrs. Otto would assert their discharge injunction and by which the Commission would raise a claim of non-dischargeability in the Tax Court forum, along with the preceding collection due process hearing by an IRS Appeals officer, are generally outlined in 26 U.S.C. § 6330. Whether or not the Ottos receive a *de novo* trial in Tax Court, they do not suggest that these procedures violate any constitutional requirements.

Pursuant to section 6330(b)(3), a collection due process hearing "shall be conduct-ed by an officer or employee who has had no prior involvement with respect to the unpaid tax." Thus, the Ottos are entitled to a hearing by an impartial IRS Appeals officer. Thereafter, they can appeal that decision, if necessary, to the Tax Court (accepting that that court has jurisdiction under *Washington v. Commissioner* ). (In the unlikely event that the Tax Court denies jurisdiction, the movants can again request that this court reopen their case.)

Accordingly, in light of all of the abovementioned considerations, it is clear that Reverend and Mrs. Otto have a reasonable alternative forum in which to raise their discharge injunction. They have not demonstrated that this alternative forum would substantially or materially differ in the application of the law or the burdens of proof if their case were brought in bankruptcy court. For these reasons, coupled with the flood of cases presently in this court, their failure to adjudicate dischargeability while the case was open, and because they waited almost two years after the closing of their bankruptcy case, the Ottos' motion to reopen shall be denied.[4]

An appropriate order shall be entered.

---

**3.** In light of this, the Ottos' concern that the Commissioner might argue that they were ineligible for certain burden shifting provisions found in 26 U.S.C. § 7491 would be irrelevant, as the burden of persuasion would always be on the IRS with regard to the assertion that the tax liabilities are nondischargeable.

I note that the issue of nondischargeability of the tax debt is distinct from any dispute concerning the amount of that debt. Even in this court, the usual rebuttable presumption in favor of the tax assessment applies. *See, e.g., Resyn Corp. v. United States,* 851 F.2d 660 (3d Cir.1988); *In re Abel,* 200 B.R. 816 (E.D.Pa.1996).

**4.** The movants also contend that the bankruptcy court would provide a more expeditious determination of their dischargeability claims. They argue that Reverend Otto filed a request for a collection due process hearing in November 2002, but to date the hearing has not been held or even scheduled.

Counsel for the IRS was unable to explain the delay, but represented that such hearings are ordinarily held rather quickly, as the IRS is unable to pursue collection of the tax obligation until the hearing is completed.

It is not entirely clear why the Ottos' collection due process hearing has been delayed for over a year. However, regardless of who precipitated the delay, I am not persuaded that the fact that a trial may be held and completed in this forum more quickly than in Tax Court makes that alternative forum inappropriate in this case. Rather, as already mentioned, the Ottos were free to raise the dischargeability of their tax claims as early as the end of 2001 as part of their bankruptcy case. They also could have sought to reopen this case in February 2002, when they knew

## ORDER

AND NOW, this 6th day of May 2004, for the reasons stated in the accompanying memorandum, it is hereby ordered that the motion to reopen this bankruptcy case pursuant to 11 U.S.C. § 350(b) is denied.

the IRS was still active as a creditor. However, they failed to raise the issue at either time.