FILED

JAN 05 2015

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**NOT FOR PUBLICATION**

## UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

| | | |
|---|---|---|
| In re: | ) | BAP No. NV-14-1079-HlPaJu |
| | ) | |
| RYAN JOHN WELCH and JOLYN M. WELCH, | ) | Bankr. No. 11-18277-LBR |
| | ) | |
| Debtors. | ) | |
| _____ | ) | |
| | ) | |
| DYMON INVESTMENTS, INC.; BK LAND INVESTORS, INC.; CHAD DYMON; JOHN "BUCK" LEE, | ) ) ) | |
| | ) | |
| Appellants, | ) | |
| | ) | |
| v. | ) | M E M O R A N D U M[1] |
| | ) | |
| RYAN JOHN WELCH; JOLYN M. WELCH; BRIAN D. SHAPIRO, Chapter 7 Trustee, | ) ) ) | |
| | ) | |
| Appellees. | ) | |
| _____ | ) | |

Argued and Submitted on September 18, 2014
at Las Vegas, Nevada

Filed - January 5, 2015

Appeal from the United States Bankruptcy Court
for the District of Nevada

Honorable Linda B. Riegle, Bankruptcy Judge, Presiding

_____

Appearances:     Stephanie M. Zinna of Olson, Cannon, Gormley, Angulo & Stoberski argued for appellants Dymon Investments, Inc., BK Land Investors, Inc., Chad Dymon, and John "Buck" Lee; Matthew Philip Pawlowski of Walsh & Friedman, Ltd., argued for appellees Ryan John Welch and Jolyn M. Welch.

---

[1] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

Before: HOULE,[2] PAPPAS, and JURY, Bankruptcy Judges.

Creditors Dymon Investments, Inc., BK Land Investors, Inc., Chad Dymon, and John "Buck" Lee (collectively "Creditors" or "Appellants") appeal the bankruptcy court's order denying their motion to reopen the closed chapter 7[3] case of debtors Ryan John Welch ("Welch") and Jolyn M. Welch (collectively, "Debtors"), by which Creditors sought to conduct an examination of Debtors under Rule 2004 of the Federal Rules of Bankruptcy Procedure. Finding no abuse of discretion, we AFFIRM.

## FACTS

Pre-petition, Appellants and Welch were all members of several limited liability companies registered in Nevada ("Companies") that were engaged in the business of acquiring real properties, entitling these properties, and selling them for profit. In 2004, certain members of the Companies initiated a complaint for judicial dissolution (the "dissolution action") against other members of the Companies, including Welch. On August 5, 2005, an Offer of Judgment was filed in the dissolution action, whereby plaintiffs offered to allow a judgment be taken against them in favor of defendants Welch and RJ Welch, Ltd. (a Nevada corporation in which Welch presumably held some interest) in the amount of $3,500,000. While

---

[2] The Honorable Mark D. Houle, U.S. Bankruptcy Judge for the Central District of California, sitting by designation.

[3] Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037.

Appellants assert Welch and RJ Welch, Ltd., were paid $3,500,000 on account of this offer of judgment (which funds are also characterized by Appellants as an "asset"), no evidence exists in the record showing that Welch or RJ Welch, Ltd. were paid any portion of the $3,500,000 or even accepted the $3,500,000 offer of judgment.

The resolution of the dissolution action is not clear from the record. Subsequently, however, the plaintiffs in the dissolution action and other parties filed a complaint in state court against Welch and others on July 7, 2006, asserting various causes of action including fraud and breach of fiduciary duty based on defendants' alleged failure to contribute as promised to the Companies, and for otherwise interfering with plaintiffs' efforts to refinance and sell certain real property owned by the Companies. Appellants assert that Debtors filed their bankruptcy petition on the eve of trial in the 2006 action.

Debtors filed for chapter 7 relief on May 27, 2011, and Lenard E. Schwartzer was appointed chapter 7 trustee ("Trustee Schwartzer"). On June 2, 2011, Creditors were sent notice of the § 341(a) meeting (set for June 27, 2011), notice that the case was a no-asset case, and instructions not to file a proof of claim unless creditors receive a notice to do so. The § 341(a) meeting was continued to July 15, 2011, and then again to August 22, 2011. Appellants appeared at the August 22, 2011 § 341(a) meeting, where they contend they were advised that Welch's attorney stole money Welch allegedly received in the dissolution action, and that Welch was required to produce

-3-

documents to Trustee Schwartzer related to Welch's claim against his attorney. Welch allegedly failed to produce any such documents. On August 24, 2011, Trustee Schwartzer withdrew his initial no asset report on the grounds that he had submitted his resignation in the case due to a conflict of interest.

Debtors received a discharge on August 29, 2011. While Appellants contend that the discharge was entered in error, there is no evidence in the record that the discharge was revoked or vacated subsequent to its entry, nor is there any indication of error in entry of the discharge since no section 727 adversary had been filed to deny the discharge.

On October 26, 2011, successor trustee Brian Shapiro ("Trustee Shapiro") was appointed. The § 341(a) meeting was continued to October 31, 2011, and again continued to November 14, 2011, although Creditors argue they did not have notice of this continued § 341(a) meeting. On November 16, 2011, Trustee Shapiro filed a notice of assets. Several months later on January 18, 2002, however, Trustee Shapiro filed a report of no distribution, and the clerk of the bankruptcy court entered a final decree that same day discharging Trustee Shapiro and closing the case.

Two months after the case was closed, on March 23, 2012, Creditors filed a Motion in the bankruptcy case for an order requiring Debtors to appear for examination under Rule 2004. Creditors later filed a Motion to Reopen Chapter 7 Case ("Motion") on August 28, 2012, seven months after the case was closed. The record provides no explanation for the delay. By the Motion, Creditors requested that the bankruptcy court reopen

-4-

the case to allow Creditors to examine Debtors under oath as to allegedly concealed assets that would be subject to liquidation and distribution to Debtors' creditors.

While the Creditors' appellate briefs reference a $3,500,000 "asset" allegedly paid to Welch to resolve the dissolution action, and at the hearing on the Motion Creditors' counsel made vague reference to a $5,000,000 sum allegedly paid to Welch pre-petition, neither the Motion nor Creditors' reply ("Reply") references any specific asset in existence or to be discovered. Instead, Creditors alleged in the Motion and Reply that they were led to believe there was some potential for a distribution of assets when the case was converted from a no-asset to an asset case by Trustee Shapiro, and further that Creditors had "specific knowledge about the tactics commonly employed by Debtors to secret assets away from the reach of their creditors."

The Motion was first heard on April 24, 2013, before the Honorable Linda B. Riegle. From our review of the case docket,[4] it appears the delay between the filing of the Motion and the April 24, 2013 hearing was entirely due to Creditors' delay in scheduling the hearing; Appellants do not assert otherwise. At the hearing, Judge Riegle expressed that she was unlikely to grant the Motion because discharge had been entered over a year earlier, in August of 2011, and she ultimately continued the

---

[4] We obtained this information by reviewing the items on the bankruptcy court's automated bankruptcy case docket in the Debtors' bankruptcy case. We may take judicial notice of the contents and filing of these items. See O'Rourke v. Seaboard Sur. Co. (In re E.R. Fegert, Inc.), 887 F.2d 955, 957-58 (9th Cir. 1989).

hearing because Creditors had failed to provide Debtors with notice of the hearing.

The excerpt of the transcript from the April 24, 2013, hearing does not reflect that Judge Riegle continued the hearing to a particular date, but on November 1, 2013, Creditors filed a Notice of Hearing for the Motion for November 27, 2013. It is unclear from the record why there was a seven-month delay between the first hearing on the Motion and the second hearing. The docket and record seems to indicate, however, that the delay was due to Creditors' delay in re-noticing the hearing; Appellants do not assert otherwise.

On November 14, 2013, Debtors filed an Opposition to the Motion. Debtors argued that the Motion was untimely and that Creditors failed to present evidence to support the proposition that Debtors concealed assets. On November 22, 2013, Creditors filed a Reply to Debtors' Opposition.

At the hearing on November 27, 2013, the Honorable Bruce T. Beesley presiding, the bankruptcy court denied the Motion. The excerpt of transcript reflects that Creditors' counsel stated at the November 27, 2013, hearing that Welch was supposed to submit additional documentation regarding "where the money went," but that these documents were never submitted. Creditors' counsel further expressed to the court that they were never given notice of the appointment of the new trustee, discharge, or closing of the case. Finally, Creditors' counsel asked the court to reopen the case to conduct a Rule 2004 examination to find the information Welch was supposed to have provided to the trustee, conceding that Creditors delayed in seeking to reopen but

arguing that where there is a potential for recovery for creditors there is "no time line under the bankruptcy code that precludes reopening the bankruptcy case." The court, in response, finding that Creditors had delayed in filing the Motion and did not exercise their other remedies, found lack of good grounds to reopen and denied the Motion.

An order was entered denying the Motion on February 6, 2014. On February 20, 2014, Creditors timely filed a notice of appeal.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334, 157(b)(2)(A) and (O). We have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Whether the bankruptcy court abused its discretion when it denied Creditors' Motion because Creditors delayed in filing the Motion and did not exercise their other remedies, such as timely requesting a 2004 examination.

## STANDARD OF REVIEW

Denial of a motion to reopen a bankruptcy case is reviewed for abuse of discretion. See Weiner v. Perry, Settles & Lawson, Inc. (In re Weiner), 161 F.3d 1216, 1217 (9th Cir. 1998); Lopez v. Specialty Restaurants, Inc. (In re Lopez), 283 B.R. 22, 26 (9th Cir. BAP 2002). Similarly, a bankruptcy court's exercise of its equitable powers is reviewed for an abuse of discretion. Baker v. Delta Air Lines, Inc., 6 F.3d 632, 639 (9th Cir. 1993).

The Panel applies a two-part test to determine whether the bankruptcy court abused its discretion. See United States v.

_Hinkson_, 585 F.3d 1247, 1261-63 (9th Cir. 2009)(en banc). A bankruptcy court abuses its discretion if it applies an incorrect legal standard, or misapplies the correct legal standard, or if its factual findings are illogical, implausible, or without support from evidence in the record. _Hinkson_, 585 F.3d at 1262.

We may affirm on any ground supported by the record, even if the ground was not relied upon by the bankruptcy court. _Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency_, 322 F.3d 1064, 1076-77 (9th Cir. 2003).

**DISCUSSION**

Appellants raise two main issues on appeal: (1) whether the bankruptcy court abused its discretion when it denied the Motion and (2) whether cause existed to grant the Motion.

"Application to have the estate reopened may be made by an 'interested party' who would be benefitted by the reopening." _In re Mullendore_, 741 F.2d 306, 308 (10th Cir. 1984)(citations omitted). Pursuant to section 350(b), the court may reopen a closed bankruptcy case to administer assets, to accord relief to the debtor or "for other cause." § 350(b). Rule 5010 provides:

> A case may be reopened on motion of the debtor or other party in interest pursuant to § 350(b) of the Code. In a chapter 7, 12, or 13 case a trustee shall not be appointed by the United States trustee unless the court determines that a trustee is necessary to protect the interests of creditors and the debtor or to insure efficient administration of the case.

Rule 5010.

"While the Code does not define 'other cause' for purposes of reopening a case under section 350(b), the decision to reopen or not is discretionary with the court, which may consider

-8-

numerous factors including equitable concerns, and ought to emphasize substance over technical considerations." Emmerling v. Batson (In re Emmerling), 223 B.R. 860, 864 (2d Cir. BAP 1997)(citations omitted); see also Matter of Bianucci, 4 F.3d 526, 528 (7th Cir. 1993); Ashe v. Ashe (In re Ashe), 228 B.R. 457, 461 (C.D. Cal. 1998).

As explained by this Panel in Menk v. Lapaglia (In re Menk), 241 B.R. 896, 916-17 (9th Cir. BAP 1999):

> In short, the motion to reopen legitimately presents only a narrow range of issues: whether further administration appears to be warranted; whether a trustee should be appointed; and whether the circumstances of reopening necessitate payment of another filing fee. Extraneous issues should be excluded.

Further, a bankruptcy court may consider a number of nonexclusive factors in determining whether to reopen, including (1) the length of time that the case has been closed; (2) whether the debtor would be entitled to relief if the case were reopened; and (3) the availability of nonbankruptcy courts, such as state courts, to entertain the claims. In re Antonious, 373 B.R. 400, 405-06 (Bankr. E.D. Pa. 2007). Bankruptcy Courts can also consider whether any parties would be prejudiced were the case reopened or not. In re Otto, 311 B.R. 43, 47 (Bankr. E.D. Pa. 2004).

## A. Lack of Diligence in Seeking Relief

While there is no express time period under § 350 within which a motion to reopen must be filed, the request to reopen must be made within a "reasonable" time, and what constitutes reasonableness is determined on a totality basis. See, e.g., Matter of Pagan, 59 B.R. 394 (D.P.R. 1986)(denying motion to

-9-

reopen under a laches analysis where movant had knowledge of the bankruptcy, but waited four years to file the motion); Stackhouse v. Plumee (In re Plumee), 236 B.R. 606, 610-11 (E.D. Va. 1999)("in deciding whether to reopen an estate, the length of time between the estate's closing and the motion to reopen it should be 'of crucial significance' to the bankruptcy court. '[A]s the time between closing of the estate and its reopening increases, so must also the cause for reopening increase in weight.'") (citation omitted).  As stated on this point by the Seventh Circuit in Redmond v. Fifth Third Bank, 624 F.3d 793, 799 (7th Cir. 2010 ):

> The passage of time weighs heavily against reopening. The longer a party waits to file a motion to reopen a closed bankruptcy case, the more compelling the reason to reopen must be.  In assessing whether a motion is timely, courts may consider the lack of diligence of the party seeking to reopen and the prejudice to the nonmoving party caused by the delay.

Redmond, 624 F.3d at 799 (citations omitted).

Here, the bankruptcy court determined that Creditors' delay in filing the Motion was significant.  Creditors were well aware of Debtors' bankruptcy, as they had notice of the May 27, 2011, petition date, and actively participated in, at least, Debtors' § 341(a) meeting on August 22, 2011.  Nonetheless, Creditors did not seek permission to conduct a Rule 2004 examination until more than two months after the Debtors' case closed on January 18, 2012, or more than ten months after the case was filed.  More importantly, Creditors thereafter did not file the Motion until August 28, 2012, five months after seeking the Rule 2004 examination and more than eight months after the case closed, and then inexplicably did not set the Motion for hearing

-10-

until eight months later on April 24, 2013. Because Creditors initially failed to serve Debtors with notice of the Motion, the April 24, 2013 hearing then had to be continued, and Creditors delayed again in waiting until November 1, 2013, to give notice of the continued hearing date on November 27, 2013. Ultimately, due entirely to Creditors' lack of diligence, the Motion was not heard until more than a year after the Motion was filed, and almost two years after the case had been closed.

Creditors concede without explanation that they were solely responsible for this delay. As Creditors' counsel opaquely acknowledged at the hearing on the Motion: "there were problems on my clients' side and there was a delay on my clients' side in asking to reopen." Given the record before the bankruptcy court, where (i) Creditors had substantial pre-petition experience with Welch as former business partners and litigation adversaries, (ii) Creditors had notice of and actively participated in the bankruptcy case, and (iii) because of Creditors' numerous failures the hearing on the Motion did not take place until almost two years after the case was closed, it was not an abuse of discretion for the bankruptcy court to find that the delay in seeking to reopen the case was unreasonable under the circumstances.

On this point we echo the comments of the district court in In the Matter of Pagan, which stated, in denying a motion to reopen a bankruptcy case, that:

> We note that equity assists the vigilant and diligent, not those who sleep on their rights. Appellants' actions after receiving notice of the bankruptcy constitute dilatory behavior under the circumstances.

-11-

Pagan, 59 B.R. 394 at 397. To that end, we find unpersuasive Appellants' arguments that Creditors' failure to promptly seek a Rule 2004 examination was caused by the lack of notice of several § 341(a) meetings. Creditors clearly were familiar with Debtors at the time the bankruptcy case was filed, had apparent reason to believe Debtors were hiding assets, and actively participated in the bankruptcy case. Nonetheless, at every turn in the course of defending their interests in Debtors' case, Creditors' behavior was inexplicably dilatory.

In this light, and while creditors are certainly entitled to notice of § 341(a) meetings as a general rule, the alleged partial failure of such notice, along with some level of confusion caused by the substitution of trustees, is insufficient in the totality of circumstances to excuse Creditors' delay in protecting their rights. It is common practice for a chapter 7 trustee to orally announce the continued § 341(a) meeting date at the conclusion of the meeting, which would negate the obligation to give notice of the continued meeting, and here Creditors appeared at at least one § 341(a) meeting. Moreover, Creditors were aware of the filing of the case but failed to seek a Rule 2004 examination during the almost eight months the case was open, nor did they take minimal steps to monitor the case such as filing a request for special notice or periodically viewing the docket electronically.

Finally, Creditors' counsel was sent BNC notice of the discharge on August 29, 2011. Creditors were thereby, at a minimum, on constructive notice that the closing of Debtors'

-12-

case was imminent. However, the record does not reflect any inquiry by Appellants as to the status of the case or any effort to set a Rule 2004 exam until after the case was closed. This is particularly compelling given the close and litigious pre-petition relationship between the parties, and supports the conclusion that the bankruptcy court's ruling was not an abuse of discretion.

As such, the bankruptcy court did not err when it considered the delay in seeking to reopen as cause to deny the Motion.

**B. No prima facie proof that case was not fully administered**

With respect to the potential for recovery for the estate, the bankruptcy court has the duty to reopen an estate whenever prima facie proof is made that it has not been fully administered. Lopez v. Specialty Restaurants Corp. (In re Lopez), 283 B.R. 22, 27 (9th Cir. BAP 2002)(citing Kozman v. Herzig (In re Herzig), 96 B.R. 264, 266 (9th Cir. BAP 1989)). "In particular, it is an abuse of discretion to deny a motion to reopen where assets of such probability, administrability, and substance appear to exist as to make it unreasonable under all the circumstances for the court not to deal with them." Id. (internal quotation marks omitted). "A motion to reopen can be denied, however, where the chance of any substantial recovery for creditors appears too remote to make the effort worth the risk." Lopez, 283 B.R. at 27 (internal quotation marks omitted).

As to Creditors' contention that the case had not been fully administered, Creditors merely state in the Motion that:

Creditors have suspected that Debtors are concealing

-13-

> substantial assets that would be subject to liquidation and distribution to their creditors. . . . these Creditors have specific knowledge about the tactics commonly employed by Debtors to secret assets away from the reach of their creditors.

Motion, page 3, lines 27-28, page 4, lines 4-5.

Similarly, Creditors contend in their Reply that:

> Creditors are not making this request with a light heart and mere speculation. Creditors were business associates of the Debtors and know them well, and although Debtors have argued that there are no specific allegations about Creditors' knowledge of Debtors' activities, facts regarding Debtors' true finances <u>may come to light during a debtor examination</u>.

Reply, page 2, lines 10-13 (emphasis added).

Noting the business relationship and subsequent prolonged litigation between the parties (which would presumably result in a more detailed understanding of the existence of Debtors' alleged substantial assets and/or the tactics used to hide them), and at the same time the lack of detail regarding the "tactics" allegedly employed by Debtors along with only unsubstantiated and vague assertions insinuating the possible existence of some undefined asset (be it the $3,500,000 "asset" referred to in Appellants' appeal briefs that was allegedly paid to Debtors at some point pre-petition, the $5,000,000 "payment" referred to by Creditors' counsel during the hearing on the Motion, or otherwise), there is nothing in the record to establish prima facie proof the case was not fully administered.

Moreover, while Appellants assert that Debtors never produced certain documents requested by Trustee Schwartzer, including settlement documents regarding the $3,500,000 offer of judgment, Creditors conceded at oral argument on appeal that they never followed up with Trustee Schwartzer or Debtors to

-14-

confirm whether such documents were in fact ever produced. The lack of diligence by Creditors in this regard further serves to undermine the existence and substance of any hidden assets. Even though Creditors' focus in seeking a Rule 2004 examination reflects that Creditors needed to conduct an investigation to identify and locate allegedly hidden assets, these facts warrant denial since there was no showing to support a finding that there was a chance of substantial recovery for creditors. See Lopez, 283 B.R. at 27.

Based on the foregoing, the bankruptcy court did not abuse its discretion in denying the Motion given the lack of any specific asset and the mere speculative prospect (much less a substantial one) of any ultimate recovery for creditors. See id.

## C. Prejudice to Debtors upon Reopening

"In the absence of some meaningful prejudice, a court of equity would abuse its discretion by barring the reopening of a case." In re Emmerling, 223 B.R. at 865. This Panel has found that a bankruptcy court abused its discretion where it denied a debtor's motion to reopen the case to schedule an omitted cause of action based on debtor's bad faith. Lopez, 283 B.R. at 22.

Where, as here, there is no evidence of any asset (or likelihood of discovering any asset) to be recovered for creditors, notwithstanding the extensive pre-petition relationship between the parties and where Creditors had ample opportunity during the pendency of the case to investigate potential assets, and given that the chapter 7 trustee implicitly determined there were no assets worth pursuing,

reopening the case would cause meaningful prejudice to Debtors. Among other things, reopening the case to allow Creditors to conduct a Rule 2004 examination would subject Debtors to examination and additional litigation fees more than two years after they had received their discharge. Given these circumstances the bankruptcy court did not abuse its discretion in denying the Motion.

## CONCLUSION

Based on our review of the record, we conclude that the court below did not abuse its discretion when it denied the Motion. We therefore AFFIRM the bankruptcy court's order.